Catherine Jordan, as Administratrix of the Estate of Joseph Jordan, Deceased, Plaintiff, *v.* City of New York et al., Defendants.

City of New York, Third-Party Plaintiff-Appellant, *v.* Grove, Sheperd, Wilson & Kruge, Inc., Third-Party Defendant-Respondent.

First Department, May 7, 1957.

508

*Fred Iscol* of counsel (*Seymour B. Quel* with him on the brief; *Peter Campbell Brown, Corporation Counsel,* attorney), for appellant.

*Joseph J. Brophy* of counsel (*Desmond T. Barry* and *James A. Treanor, Jr.,* with him on the brief; *Cotter, Carey & Schultz,* attorneys), for respondent.

VALENTE, J. In this wrongful death action the jury returned a verdict in favor of the plaintiff administratrix against the City of New York.

The intestate, an employee of the respondent contractor engaged in constructing a power plant for the city, was killed when he fell into an unguarded turbine pit. The negligence of the city was its failure to comply with section 241 of the Labor Law specifically, to protect by a standard railing any opening into which a workman might fall.

Following the return of the verdict, the trial court dismissed as a matter of law the city's third-party complaint seeking contractual indemnity from the contractor on the ground that the agreement does not "unequivocally express" the intention of the contractor to indemnify the city for its failure to perform a statutory active nondelegable duty, thus posing the sole issue to be determined on this appeal.

The city concedes its negligence and its status as an active tort-feasor resulting from its failure — as owner of the building in the course of construction — to perform a statutory positive nondelegable duty imposed by section 241 of the Labor Law, and further concedes that it has no cause of action for common-law indemnification against the contractor, its cotort-feasor.

The city can recover over against the contractor only if the contract involved affirmatively indemnifies it against its own active negligence or if the intent to indemnify it can be clearly implied from the contract and the surrounding facts. However, in the latter instance such a contract will not be construed to indemnify a party against his active negligence unless such intention is expressed in unequivocal terms (*Thompson-Starrett Co.* v. *Otis Elevator Co.*, 271 N. Y. 36). Such an agreement is not against public policy. There exists the requirement, however, that the contract express a clear and unequivocal intent to indemnify a party against his own negligence. This does not mean, in order to warrant a construction, that it was so intended, that the contract must contain express language referring to the negligence of the indemnitee (*People* v. *Westchester Colprovia Corp.*, 1 A D 2d 724; *Salamy* v. *New York Central System*, 1 A D 2d 27; *Long Island R. R. Co.* v. *American Bridge Co.*, 175 App. Div. 170, affd. 225 N. Y. 692).

In denying the city judgment on its third-party complaint, the trial court relied on *Semanchuck* v. *Fifth Ave. & 37th St. Corp.* (290 N. Y. 412) and *Walters* v. *Rao Elec. Equip. Co.* (289 N. Y. 57). The significance of these cases is that they hold that section 241 of the Labor Law imposes a statutory non-delegable duty, the violation of which constitutes active negligence not properly subject to common law indemnity as between active and passive tort-feasors. In short, they hold that a violation of section 241 of the Labor Law is active negligence. This holding does not in any way modify the rule of construction of indemnity provisions of a contract enunciated in the *Thompson-Starrett* case (*supra*). The test of clear and unequivocal intent to indemnify is the same whether the active negligence is one arising from common law or the violation of a statutory duty. Active negligence arising from a violation of a statutory duty involves no greater turpitude than active negligence under the common law. Indeed, these cases reaffirm the right of a party to secure himself against his own negligence. They make no distinction between common-law active negligence and that resulting from a violation of a statutory duty in the sense that in the latter case greater specificity is required in a contract

to insure effective indemnification. In sum, they do not command that the agreement so provide in *haec verba*.

In each case the court did construe the sufficiency of the single indemnity provision there involved. In the *Walters* case the court held that there was no basis for any recovery over because the contractor had assumed liability only for its own act or that of any person employed by it. In the *Semanchuck* case, in considering the sufficiency of the indemnity provision, the court stated at page 423 that " any agreement to provide indemnity for failure to perform such active primary duty [Labor Law, § 241] must be unequivocally expressed." This is almost a verbatim repetition of the rule of the *Thompson-Starrett* case (*supra*) except there is substituted for " a person's own negli- gence " the words " to perform such active primary duty ".

Significantly, in the *Walters* case, the court stated that the language of indemnification in the case of *Turner Constr. Co.* v. *Rockwood Sprinkler Co.* (275 N. Y. 635) was sufficient to permit recovery over by the general contractor against the subcontractor and, in so doing, specifically approved the rule of the *Thompson-Starrett* case.

Looking first generally to the contract in issue, it is manifest that it does not contemplate the city's taking an active part in the construction work in the sense that the city is to perform any of the work. Standing alone this does not afford the city any basis of recovery over because of the holdings in the *Walters* and *Semanchuck* cases. It is, nevertheless, important in shedding light on what the parties intended to include in the indemnification provisions.

There is a substantial difference between the language of this agreement and that in the *Semanchuck* case. The indemnity provision in the latter case (p. 419) provides for the assumption by the contractor of " the obligation to save the Owner harmless and indemnify him from * * * liability * * * by reason of any injury to any person * * * resulting from any action or operation under this contract." In the absence of other provisions from which the clear intent could be ascertained, there was ample justification for the court to hold that this provision did not indemnify the owner against his own negligence.

The language in the indemnity provisions in the case under consideration refers to the *sole* responsibility of the contractor for all physical injuries with the same modification as in the *Semanchuck* case " on account of the work hereunder." However, subdivision (a) of paragraph 14 thereof concludes with the following significant language: " [I]t being distinctly under-

stood, stipulated and agreed that the Contractor shall be *solely responsible* and liable for and shall *fully protect* and indemnify the City against all claims for injuries to person or damage to property occasioned by or resulting from methods or processes in the performance of the Works *whether such damages or injuries be attributable to negligence of the Contractor or his employees or otherwise.*'' (Emphasis supplied.)

In subdivision (c) of the same paragraph the contractor assumes the sole responsibility for the safety and protection of the premises and of the employees and assumes liability for any injury or damage occurring on account of the performance of work under this contract and includes with this all-embracing clause: '' whether due to the negligence, fault or default of the Contractor or not.''

Relevant also is paragraph 15 of the agreement which we construe to clearly intend an assumption of liability on the part of the contractor for any affirmative acts of negligence on the part of the city. This paragraph reads: '' Liability of Contractor is Absolute. The liability of the Contractor under this contract is absolute and is not dependent upon any question of negligence on his part or on the part of his agents, servants or employees, and neither the approval by the Engineers or the Chief Engineer of the methods of doing the work nor the failure of the Engineers or the Chief Engineer to call attention to improper or inadequate methods or to require a change in methods, nor the neglect of the Engineers or the Chief Engineer to direct the Contractor to take any particular precautions or to refrain from doing any particular thing shall excuse the Contractor in case of any such injury to person or damage to property.''

This provision not only specifically relieves the city from any liability for its failure to act but also from the consequences resulting in instances where the city chooses to act or direct. We find this to include the failure of the city in this instance either to erect or direct the erection of a standard railing covering the opening into which the deceased fell.

The language of this contract is at least as broad if, indeed, not broader than the language of indemnification in *Turner Constr. Co.* v. *Rockwood Sprinkler Co.* (*supra*) approved as sufficient in the *Walters* case.

The language of the indemnity agreement in the *Turner* case '' assumed entire responsibility  *  *  *  caused by or resulting from the execution of the work  *  *  *  and  *  *  * agreed to indemnify  *  *  *  from and against any and all loss  *  *  *  occasioned directly or indirectly  *  *  *

whether the same arose under the common law or otherwise." The active duty omitted in the *Turner* case, (*supra*) was an omission to fence a shaft in the manner provided.

The contract pattern and the words in the quoted portions of the indemnity provisions here are clear. The scope of the indemnity is comprehensive. The manifest intent of the contract is to provide absolute indemnity to the city for injuries sustained by any person in the course of the work, inclusive of any caused by the city's active negligence — common-law as well as statutory. We conclude that the intent of the respondent to indemnify the city against its own negligence is " unequivocally expressed ".

For the reasons indicated, the judgment appealed from should be modified by directing that the City of New York as third-party plaintiff recover against Grove, Sheperd, Wilson & Kruge, Inc., the sum of $50,000 paid by the city to the plaintiff in satisfaction of the judgment recovered by the plaintiff against the city together with interest from the date of such payment and costs.

Botein, J. (dissenting). Involved here is the construction of an indemnity clause in a long, comprehensive agreement that was expertly drawn on behalf of the city. In such an agreement an intention " that one tort feasor should provide to a partner in the wrong, indemnity against liability arising from failure of the other tort feasor to perform a positive action duly imposed by statute " must be unequivocally expressed (*Semanchuck* v. *Fifth Ave. & 37th St. Corp.*, 290 N. Y. 412, 421, 422; see, also, *Walters* v. *Rao Elec. Equip. Co.*, 289 N. Y. 57; *Thompson-Starrett Co.* v. *Otis Elevator Co.*, 271 N. Y. 36).

The critical language in the contract under consideration in this case will be found in subdivisions (a) and (c) of paragraph 14 — the former dealing generally with responsibility for injuries to persons and damage to property, and the latter dealing more specifically with the contractor's responsibility for damages to the premises and injuries to employees. These provisions obligate the contractor to indemnify the city from liability on account of " any neglect, fault or default of the Contractor " and for all claims arising out of the work performed by the contractor "whether such damages or injuries be attributable to the negligence of the Contractor or his employees or otherwise " or " whether due to the negligence, fault or default of the Contractor or not ". There is no doubt that the obligation to hold the city harmless for the consequences of the contractor's acts is clearly expressed. However,

no such unequivocal undertaking to indemnify the city for the consequences of the city's own negligence appears in either clause.

The quoted phrases do not resolve the ambiguity. They are capable of at least two diverse interpretations. It may be argued either that the clauses under consideration are intended to assume responsibility not only for the negligence of the contractor and his employees but for the negligence of others; or, and more probably, that the additional language is designed to include within the scope of the indemnity claims for damages or injuries which might arise against the contractor irrespective of negligence*. And language subject to alternative meanings cannot be said to be unequivocal.

One must speculate as to why the same expert draftsman who so explicitly spelled out the contractor's liability for his own negligence did not obligate the contractor to indemnify the city for " negligence of the contractor or his employees *or negligence of the City or its employees* or otherwise " (suggested addition to par. 14, subd. [a] emphasized). Such a clear and unequivocal statement of indemnification, had that been the intent of the parties, would have suggested itself repeatedly in the drafting of the several paragraphs dealing with the contractor's responsibilities.

If the intent to indemnify the city against the consequences of its own negligence is not manifest in subdivisions (a) and (c) of paragraph 14, it cannot be supplied by paragraph 15. That paragraph merely makes absolute the obligation of the contractor to indemnify the city pursuant to subdivisions (a) and (c) of paragraph 14, eliminating certain considerations that might otherwise tend to exculpate the contractor.

JUDGE CARDOZO deplored a judicial tendency " to match the colors of the case at hand against the colors of many sample cases spread out upon their desk ", the sample nearest in shade supplying the applicable rule (CARDOZO, Nature of the Judicial Process, p. 20). We are doing nothing less when we place the relevant clauses in this case, in *Turner Constr. Co.* v. *Rockwood Sprinkler Co.*, 275 N. Y. 635, and in the *Semanchuck, Walters* and *Thompson-Starrett cases* (*supra*) in parallel columns and dissect them for similarities and differences. The very fact that we are driven to such expedients would indicate that on a fair reading the indemnification clauses in issue here are not clear and unambiguous.

---

* The word " otherwise " refers to the way or manner in which the liability arises. If persons other than the contractor or his employees were meant, the natural word to use would be " others ".

514

There are no surrounding facts and circumstances in this case, as were present in *Salamy* v. *New York Central System* (1 A D 2d 27) that would transfuse a clear intent into the otherwise inconclusive indemnity provisions of the contract under consideration. Nor is there here a clear and explicit undertaking by the contractor, as was expressed in the agreement construed in *People* v. *Westchester Colprovia Corp.* (1 A D 2d 724, 725) which undertook to protect the State and to pay "all amounts, damages, costs, and judgments which may be recovered against said State or its officers or agents or which the said State of New York may be called upon to pay to any person or corporation by reason of any damages, direct or indirect, arising or growing out of the doing of said work, or from the negligence, non-feasance, mis-feasance or malfeasance of any officer, agent or employee of the State, or Department thereof".

The lawyers who specialize in this field are well aware that clauses such as those under consideration in this case demand laborious judicial parsing, in an effort to distill the intent of the parties. Surely, at this stage, it is not too much to require them to stop waging verbal duels and to state unmistakably whether or not a contract purports to burden the indemnitor with another's negligence.

The judgment should be affirmed.

PECK, P. J., and FRANK, J., concur with VALENTE, J.; BOTEIN, J., dissents and votes to affirm in opinion, in which BREITEL, J., concurs.

Judgment modified in accordance with the opinion herein and, as so modified, affirmed. Settle order on notice.